CHRIS BAKER, State Bar No. 181557
cbaker@bakerlp.com
MIKE CURTIS, State Bar No. 252392
mcurtis@bakerlp.com
BAKER & SCHWARTZ, P.C.
44 Montgomery Street, Suite 3520
San Francisco, CA 94104
Telephone: (415) 433-1064
Fax:  (415) 520-0446

Attorneys for Plaintiff
STEVE THOMA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE THOMA<br><br>               Plaintiff,<br><br>vs.<br><br>CBRE GROUP, INC.; CBRE, INC., J.P. MORGAN CHASE NATIONAL CORPORATE SERVICES, INC., J.P. MORGAN CHASE BANK, NA, AND J.P. MORGAN CHASE & CO., and DOES 1 THROUGH 50<br><br>               Defendants. | **CLASS ACTION, COLLECTIVE ACTION AND REPRESENTATIVE ACTION COMPLAINT**<br><br>1. Unpaid Overtime Pursuant to the FLSA<br>2. Unpaid Overtime Pursuant to California Law<br>3. Failure to Pay Wages Upon Termination<br>4. Waiting Time Penalties Pursuant to  Labor Code § 203<br>5. Unpaid Premium Pay for Missed Meal and Rest Periods<br>6. Failure to Provide Accurate Wage Statements<br>7. Unfair Business Practices<br>8. PAGA<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

Plaintiff Steve Thoma ("Plaintiff") brings the following class and representative action against defendants CBRE Group, Inc., CBRE, Inc. (collectively "CBRE") and J.P. Morgan Chase National Corporate Services, Inc., J.P. Morgan Chase Bank, NA, and J.P. Morgan Chase & Co. (collectively "Chase") on behalf of himself, all others similarly situated, other aggrieved employees, and the State of California.  Chase and CBRE misclassified Plaintiff and their other facility managers as exempt, resulting in the following alleged California Labor Code and Fair Labor Standards Act violations and related claims.

**PARTIES**

1.      Chase employed Plaintiff as a facility manager from September 2010 until December 2013, at which point substantially all of Chase's facility managers became employees of CBRE.   Chase employed Plaintiff in Los Angeles County and Plaintiff resides in Los Angeles County.

2.      Plaintiff is informed and believes and thereupon alleges that J.P. Morgan Chase National Corporate Services, Inc. is a New York corporation, registered to do business in the state of California, while J.P. Morgan Chase Bank, NA and J.P. Morgan Chase & Co. are entities of unknown form, who are not registered to do business in the state of California.  Plaintiff is informed and believes and thereupon alleges that all three have a principle places of business at 270 Park Avenue, New York, New York, although J.P. Morgan Chase Bank, NA's address is identified on Plaintiff's wage statements as 1111 Polaris Parkway Columbus, Ohio 43240.

3.      CBRE employed Plaintiff as a facility manager of Chase facilities from December 2013 to October 2015.   CBRE employed Plaintiff in Los Angeles County and Plaintiff resides in Los Angeles County.

4.      CBRE touts itself as the world's largest commercial real estate services firm serving owners, investors and occupiers.  Plaintiff is informed and

1  believes and thereupon alleges that CBRE Group, Inc. and CBRE, Inc. are each
2  Delaware corporations, with their principle places of business at 400 South Hope
3  Street Los Angeles, California.

4       5.     Plaintiff is informed and believes and thereupon alleges that each of
5  the defendants was acting in a single or joint employer, integrated enterprise,
6  agency, employer, successor, and/or alter ego capacity such that they are liable for
7  the acts of their agents and/or employees, or, depending on the nature of the
8  relationship, each other.

9       6.     Plaintiff is ignorant of the true names of those defendants sued as
10  DOES 1 through 50.  On information and belief, DOES 1 through 50 do business in
11  California and are in some manner responsible for the conduct alleged in this
12  Complaint.  Upon discovering the true names and capacities of these fictitiously
13  named defendants, Plaintiff will amend this complaint to show their true names and
14  capacities.  (For purposes of this Complaint, "Defendants" should be read to
15  include the Doe Defendants.)

## **FACTS**

17       7.     Chase operates retail banks and other business across the United
18  States.  Chase employed Plaintiff to manage a portfolio of its facilities in Southern
19  California.  Chase classified Plaintiff and its other facility managers as exempt.
20  Chase compensated Plaintiff with a salary that had an hourly equivalent of between
21  $40.86 and $42.10.  Chase's other facility managers at the time, performed job
22  duties that were substantially similar to his.

23       8.     CBRE provides facility management services to Fortune 500 and
24  smaller companies throughout California.  CBRE assigned Plaintiff to a portfolio of
25  Chase's facilities in Southern California.  CBRE classified Plaintiff and continues
26  to classify its other facility managers as exempt.  CBRE compensated Plaintiff with
27  a salary that had an hourly equivalent of between $42.10 and $44.02.  CBRE's
28  other facility managers perform job duties that are substantially similar to his.

9.      Facility managers at both Chase and CBRE are subject to numerous levels of supervision.  For instance, at CBRE they are supervised by senior facility managers, who are supervised by regional facility managers, who are supervised by regional facility directors.  Indeed many of Plaintiff's supervisors at CBRE previously worked with and supervised him at Chase.

10.      Facility managers at Chase and CBRE perform essentially the same job duties.  One of Plaintiff's most prominent duties as a facility manager was traveling to and inspecting the facilities to which he was assigned.  The inspections included things like whether fire extinguisher certifications were up to date and noting the safety and functionality of the facility.  The facility managers then must enter information about each inspection into a computer system when they return from the inspections.  In addition to the planned inspections, facility managers often had to make additional trips to their assigned facilities to respond to the need for emergency repairs, to provide access to and monitor vendors working in the facilities outside business hours, and to respond to requests to survey the facilities. The surveys include things like how many fire extinguishers are in each facility, the locations of the ATMs at each facility and the number of sprinkler watering zones at each facility.

11.      Another large part of facility managers' job duties is processing the repairs and maintenance that occurs at their assigned facilities.  Routine maintenance was either performed by in-house employees or by vendors, with vendors performing the more intensive work.  Facility managers would engage vendors on an approved list provided to the facility managers through a computer-based work order system.  Facility managers then later approve the invoice the vendor submits for the work through the same system.  Whether the work is done in-house or by a vendor, facility managers spend extensive time processing related paperwork through a computer program.

12. A small part of facility managers' jobs is working on recommendations to higher-ups for large projects at the facilities to which they are assigned. These were most commonly roof replacements or replacement of air conditioning systems. Facility managers often work with a higher-up called a project manager to prepare these recommendations.

13. Plaintiff worked well more than 40 hours each week and more than eight hours a day, but was not paid overtime at both Chase and CBRE. Plaintiff most commonly worked around 60 hours per week.

14. Neither CBRE nor Chase provided Plaintiff with legally compliant meal periods or rest periods. He was not informed of his right to take them and the crippling work load made it impossible for him to do so.

15. Plaintiff was not paid all of his earned wages upon termination at Chase or CBRE. For instance, he was not paid overtime or premium wages for missed meal and rest periods.

16. The wage statements CBRE and Chase provided to Plaintiff did not properly state, among other things, his hours worked or overtime hours.

**JURSIDICTION AND VENUE**

17. The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and section 16(b) of the FLSA, 29 U.S.C. § 216(b). In addition, this Court has supplemental jurisdiction over the California law claims under 28 U.S.C. § 1367. The jurisdiction of this Court over the subject matter of this action is also predicated on 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs.

18. Venue is proper in the Central District of California because it is where Plaintiff worked for Chase and CBRE, it is the location of CBRE's primary office, where Plaintiff resides and where a substantial part of the events or omissions giving rise to the claims occurred.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19.     Plaintiff brings the First Claim for Relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of himself and all persons who were, are or will be employed by Chase and/or CBRE as facility managers nationwide at any time within the three years prior to filing this Complaint through the date of final disposition of this action (hereafter, the "the Nationwide FLSA Collective Plaintiffs").

20.     The Nationwide FLSA Collective Plaintiffs are subdivided into the following subclasses:

a.     All Nationwide FLSA Collective Plaintiffs employed by Chase as facility managers and/or with similar job titles and duties within the United States at any time within the three years prior to filing this Complaint through the date of final disposition of this action, who file(d) consents to join this collective action as party plaintiffs pursuant to 29 U.S.C. § 216(b).

b.     All Nationwide FLSA Collective Plaintiffs employed by CBRE as facility managers and/or with similar job titles and duties within the United States at any time within the three years prior to filing this Complaint through the date of final disposition of this action, who file(d) consents to join this collective action as party plaintiffs pursuant to 29 U.S.C. § 216(b).

21.     Plaintiff and the Nationwide FLSA Collective Plaintiffs are similarly situated in that they have substantially similar job requirements and pay provisions within each FLSA subclass, and are or were subject to each Defendant's common practice, policy, or plan of unlawfully characterizing them as exempt employees and failing to pay them overtime compensation for all overtime hours worked in violation of the FLSA.

22.     The First Claim for Relief for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), because Plaintiff's claims are substantially similar to the

claims of the Nationwide FLSA Collective Plaintiffs and the members of the FLSA subclasses.

23.     The names and addresses of the Nationwide FLSA Collective Plaintiffs are available from Chase and CBRE, and notice should be provided to the Nationwide FLSA Collective Plaintiffs via first class mail to the last address known to their employer(s) as soon as possible.

## **CLASS ACTION ALLEGATIONS**

24.     Plaintiff brings the Second through Eighth Claims for Relief on behalf of the following classes and subclasses, pursuant to Federal Rules of Civil Procedure Rule 23(a), (b)(2) and (b)(3):

a.     CBRE Facility Manager Class, which is defined as all current and former CBRE facility managers who worked for CBRE in California within four years of this complaint's filing date.  Within this CBRE Facility Manager Class is the Former CBRE Facility Manager Subclass, which is limited to CBRE Facility Manager Class members who have separated from employment with CBRE.

b.     Chase Facility Manager Class, which is defined as all individuals who worked for Chase as facility managers in California within four years of this complaint's filing date.

25.     Plaintiff reserves the right to refine the definition of the proposed Classes (including the applicable time frame) based on further investigation and discovery.

26.     Plaintiff's claims should be resolved on a class-wide basis, and there is a well-defined community of interest with respect to the litigation.

18.     The Classes are so numerous that joinder of all putative class members is impracticable.  Plaintiff is informed and believes, and on that basis alleges, there are at least 75 individuals who satisfy the definition of the CBRE Facility Manager Class.  Plaintiff is informed and believes, and on that basis alleges, there are 40 or more individuals who satisfy the definition of the Chase Facility Manager Class.

27.     The Classes are ascertainable.

28.     Plaintiff's claims are typical of the claims of the Classes he seeks to represent.  Plaintiff and all members of the classes have been similarly affected by Defendants' conduct since they were all deprived overtime and suffered similar California Labor Code violations.

29.     Plaintiff will fairly and adequately represent and protect the interests of the Classes.  Plaintiff does not have interests which are adverse to the interests of absent class members.

30.     Class counsel is experienced, qualified and capable.  They have litigated numerous class action cases.

31.      There are common questions of law and fact that predominate include:

        a.      Are facility managers exempt from California's wage and hour laws?

        b.      Is there a realistic expectation that facility managers spend more than fifty percent of their work time on exempt job duties under California law?

        c.      Is there a realistic expectation that facility managers' job duties are properly characterized as exempt job duties under California law?

        d.      Is performing site inspections an exempt job duty under California law?

        e.      Is traveling to facilities an exempt job duty under California law?

        f.      Is interacting with vendors and in-house employees concerning repairs and maintenance at assigned facilities an exempt job duty under California law?

        g.      Is surveying various items at facilities an exempt job duty under California law?

        g.      Is processing paperwork related to repairs and maintenance an exempt job duty under California law?

h.     Is working on recommendations for large projects an exempt job duty under California law?

i.     Did Defendants suffer or permit facility managers to work overtime under California law?

j.     Did Defendants provide facility managers with legally compliant meal periods under California law?

k.     Did Defendants provide facility managers with legally compliant rest periods under California law?

l.     Did Defendants' policies inform facility managers of their rights to take compliant meal and rest periods?

m.     Is Defendants' refusal to pay former employees all wages owed at the time of their termination willful under California law?

n.     Did Defendants knowingly and intentionally fail to provide information in Plaintiff's and the Classes' wage statements required by California Labor Code section 226(a)?

o.     Did Defendants' wage statements provided to Plaintiff and the Classes allow them to promptly and easily determine, from the wage statements alone, their total hours worked and/or all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate?

p.     Did Defendants keep payroll records showing the hours worked daily by Plaintiff and the Classes?

q.     Did Defendants fail to pay earned wages, including overtime, bi-weekly to Plaintiff and the Classes under California law?

32.     A class action is the superior way of resolving the class members' claims. Class treatment will permit a large number of similarly situated persons to prosecute their claims in a single forum and without unnecessary duplication, and without fear of retaliation. The damage incurred by each class member is relatively small, and the burdens of litigation would make it difficult or impossible for

individual members to redress the wrong done to them.  The cost to the court system of individualized litigation would be substantial.  Individualized litigation would also present the potential for inconsistent or contradictory judgments.

33.     Class certification of the Second through Eighth Claims for Relief is also appropriate for the CBRE Facility Manager Class pursuant to the Federal Rules of Civil Procedure Rule 23(b)(2) because CBRE has acted or refused to act on grounds generally applicable to the CBRE Facility Manager Class, making appropriate declaratory and injunctive relief with respect to the CBRE Facility Manager Class.

34.     Plaintiff intends to send notice to all members of the classes to the extent required by Rule 23.

## FIRST CAUSE OF ACTION

## Unpaid Overtime Pursuant to the FLSA

35.     Plaintiff incorporates paragraphs 1 through 34 of this Complaint as if fully set forth here.

36.     At all relevant times, Defendants have been, and continue to be, enterprises engaged in interstate commerce and/or in the production of goods for commerce with the meaning of 29 U.S.C. § 203.

37.     Attached to this complaint as Exhibit A is the consent to sue signed by Plaintiff pursuant to 29 U.S.C. §§ 216(b) and 256.

38.      The FLSA requires employers to pay employees overtime for all hours worked in excess of 40 in a week.

39.     Defendants knew or should have known that Plaintiff and the Nationwide FLSA Collective Plaintiffs worked more than forty hours a week. Yet they failed to pay Plaintiff and the Nationwide FLSA Collective Plaintiffs overtime for time spent working more than 40 hours in a week.  Defendants' conduct was willful and neither in good faith nor with reasonable belief that they were not required to pay overtime to facility managers.

40.   Plaintiff and the Nationwide FLSA Collective Plaintiffs were harmed as a result.  They did not receive all the wages to which they were entitled.

## SECOND CAUSE OF ACTION

## Unpaid Overtime Pursuant to California Law

41.   Plaintiff incorporates paragraphs 1 through 40 of this Complaint as if fully set forth here.

42.   Under California law, an employer must pay an employee overtime based upon their regular rate of pay for time worked in excess of 8 hours in a day. *See* California Labor Code sections 510, 1194.

43.   Defendants knew or should have known that Plaintiff and the Classes worked more than eight hours a day and more than forty hours a week.

44.   Defendants failed to pay Plaintiff and the Classes overtime for time spent working more than 8 hours in a day and/or 40 hours in a week.

45.   Plaintiff and the Classes were harmed as a result.  They did not receive all the wages to which they were entitled.

## THIRD CAUSE OF ACTION

## Failure To Pay Wages Upon Termination

## (Limited to CBRE Former Facility Manager Subclass and Chase Facility Manager Class)

46.    Plaintiff incorporates paragraphs 1 through 45 of this Complaint as if fully set forth here.

47.   Under California law, an employer must pay an employee all accrued wages upon termination.  *See* Labor Code sections 201 and 202.

48.   Defendants did not pay Plaintiff, the CBRE Former Facility Manager Subclass or the Chase Facility Manager Class all owed overtime, premium pay for missed meal and rest periods, and other owed wages upon termination.

49.   Plaintiff, the CBRE Former Facility Manager Subclass and the Chase Facility Manager Class were harmed as a result of Defendants' actions.

## FOURTH CAUSE OF ACTION

### Waiting Time Penalties

### (Limited to CBRE Former Facility Manager Subclass and Chase Facility Manager Class)

50.     Plaintiff incorporates paragraphs 1 through 49 of this Complaint as if fully set forth here.

51.     Under California law, an employer must pay an employee all wages due upon termination or resignation.  The willful failure to do so results in waiting time penalties equal to 30 days of an employee's wage.  *See* Labor Code section 203.

52.     Defendants did not pay Plaintiff, the CBRE Former Facility Manager Subclass or the Chase Facility Manager Class all wages due and owing upon their separation from employ.  Defendants did not pay owed overtime wages.  Defendants did not pay premium pay for missed meal and rest periods.

53.     This conduct by Defendants was willful.  They knew or should have known of the overtime wages incurred by Plaintiff, the CBRE Former Facility Manager Subclass and the Chase Facility Manager Class.  They knew or should have known that they were not paying Plaintiff, the CBRE Former Facility Manager Subclass or the Chase Facility Manager Class premium pay for missed meal and rest periods.

54.     As a result, Defendants are liable to Plaintiff, the CBRE Former Facility Manager Subclass and the Chase Facility Manager Class for waiting time penalties.

## FIFTH CAUSE OF ACTION

### Unpaid Premium Pay For Missed Meal And Rest Periods

55.     Plaintiff incorporates paragraphs 1 through 54 of this Complaint as if set forth here.

56.    Labor Code § 512 and applicable wage orders require that an employee receive a meal period of one half hour in which the employee is relieved of all duty for every five hours worked.  Employees must receive a second meal period for workdays in which an employee works more than 10 hours.

57.    Applicable wage orders provide that employers shall authorize and permit employees to take rest periods at the rate of ten minutes net rest time per four hours of work or major fraction thereof.

58.    Labor Code § 226.7 provides that if an employer fails to provide an employee required rest periods and meal periods, the employer shall pay the employee one hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided and one hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided

59.    Plaintiff and the Classes did not receive legally compliant rest or meal periods.

60.    Defendants were aware that Plaintiff and the Classes did not receive legally compliant meal or rest periods but did not pay the premium pay required by Labor Code § 226.7.

61.    Plaintiff and the Classes were harmed as a result because they did not receive all the premium pay to which they were entitled.

### SIXTH CAUSE OF ACTION

### Failure To Provide Accurate Wage Statements

62.    Plaintiff incorporates paragraphs 1 through 61 of this Complaint as if fully set forth here.

63.     Under California law, an employer must provide employees with an accurate wage statement.  Among other things, the wage statement must include the gross wages earned, the total hours worked, and the wage rate worked for each hour.  An employee suffers injury when this law is violated if the employee cannot (among other things) easily determine from the wage statement the gross or net

wages paid or earned or the hours worked.  The penalties for violating this law are set by statute.  See California Labor Code sections 226.

64.     Defendants knowingly and intentionally failed to provide Plaintiff and the Classes with accurate wage statements.  Because Defendants misclassified the Classes as exempt employees, and because they work and earn overtime, but are not paid overtime, the wage statements are inaccurate.  The wage statements are also inaccurate because they do not include all applicable hourly rates in effect during the pay period with the corresponding number of hours worked at each hourly rate. See Labor Code § 226(a)(9).

65.     Plaintiff and the Classes suffered injury as a result of Defendants' conduct.  They were not able, from a review of the wage statements, to determine their total hours worked and/or all applicable hourly rates in effect during the pay period with the corresponding number of hours worked at each hourly rate.

### SEVENTH CAUSE OF ACTION

### Unfair Business Practices

66.     Plaintiff incorporates paragraphs 1 through 65 of this Complaint as if fully set forth here.

67.     California law prohibits any unlawful, unfair, or fraudulent business practice.  *See* California Business and Professions Code section 17200.

68.     Through their actions (as described above), Defendants violated a variety of California wage and hour laws and the FLSA.  Plaintiff and the Classes have been harmed by Defendants' conduct.  They have not been paid all wages earned.  They have not been paid on a timely basis.  They are entitled to restitution and an injunction.

///

///

///

///

## **EIGHTH CAUSE OF ACTION**

### **Private Attorneys General Act ("PAGA")**

#### **(Alleged only against CBRE)**

69.     Plaintiff incorporates paragraphs 1 through 68 of this Complaint as if fully set forth here.

70.     Plaintiff incorporates paragraphs 1 through 72 of this Complaint as if set forth here with the following exception.  Plaintiff does not bring this PAGA cause of action as a class action.

71.     Plaintiff is an aggrieved employee under PAGA because he was employed by CBRE during the applicable statutory period and suffered one or more of the Labor Code violations set forth in this Complaint.  Plaintiff seeks to recover on his behalf, on behalf of the State, and on behalf of all current and former aggrieved employees of CBRE, the civil penalties provided by PAGA, plus reasonable attorney's fees and costs in this representative action.

72.     Plaintiff seeks penalties pursuant to PAGA for violation of the following Labor Code sections:

        a.     Failure to provide prompt payment of wages upon termination and resignation in violation of Labor Code §§ 201, 202, 203;

        b.     Failure to provide accurate itemized wage statements in violation of Labor Code §§ 226 and 226.3;

        c.     Failure to pay overtime wages in violation of applicable wage orders and Labor Code §§ 204, 510, 558, 1194 and 1198;

        d.     failure to provide meal periods and rest periods in violation of applicable wage orders and Labor Code §§ 226.7, 512, and 558;

        e.     Failure to keep required payroll records in violation of the applicable wage orders and Labor Code §§ 1174 and 1174.5.

73.     With respect to violations of Labor Code § 204, Labor Code § 210 imposes a civil penalty (apart from other penalties) of $100 for each initial

COMPLAINT AGAINST CBRE AND JP MORGAN CHASE

violation, and $200 for each subsequent violation, in addition to 25% of the amount unlawfully withheld.

74.     With respect to violations of Labor Code § 226, Labor Code § 226.3 imposes a civil penalty in addition to any other penalty provided by law of two hundred fifty dollars ($250) per aggrieved employee for the first violation, and one thousand dollars ($1,000) per aggrieved employee for each subsequent violation of Labor Code § 226(a).

75.     With respect to violations of Labor Code §§ 510 and 512, Labor Code § 558 imposes a civil penalty in addition to any other penalty provided by law of fifty dollars ($50) for initial violations for each underpaid employee for each pay period in addition to an amount equal to the employee's underpaid wages, and one hundred dollars ($100) for subsequent violations for each underpaid employee for each pay period in addition to an amount equal to the employee's underpaid wages. The statute of limitations with respect penalties under Labor Code § 558 is three years.   Plaintiff seeks civil penalties in the amount of unpaid wages owed to aggrieved employees pursuant to Labor Code § 558(a)(3).

76.     With respect to violations of Labor Code § 1174, Labor Code § 1174.5 imposes a civil penalty of $500 for each violation.

77.     With respect to violations of Labor Code §§ 201 and 202, Labor Code § 256 imposes a civil penalty not to exceed 30 days' pay as a waiting time penalty under the terms of Labor Code § 203.

78.     Labor Code § 2699 et seq. imposes a civil penalty of one hundred dollars ($100) per pay period, per aggrieved employee for initial violations, and two hundred dollars ($200) per pay period, per aggrieved employee for subsequent violations for all Labor Code provisions for which a civil penalty is not specifically provided.

COMPLAINT AGAINST CBRE AND JP MORGAN CHASE

79.     To the extent applicable, Plaintiff has satisfied the requirements of Labor Code section 2699.3, as shown in Exhibit B that is attached to this Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, the Nationwide FLSA Collective Plaintiffs, the Classes, and on behalf of the Sate and other aggrieved employees, prays for judgment against Defendants as follows:

1.      An Order that this action may proceed and be maintained on a class-wide basis and/or collective basis for the FLSA claim;

2.      Appropriate injunctive relief;

3.      Attorneys' fees and costs;

4.      Restitution;

5.      Damages, including unpaid wages and statutory penalties, according to proof;

6.      Civil Penalties pursuant to PAGA against CBRE;

7.      Liquidated damages pursuant to the FLSA;

8.      Pre-judgment and post-judgment interest, as provided by law;

9.      All other relief the Court deems equitable and proper.


Dated:  August 11, 2016            BAKER & SCHWARTZ, P.C.


                                   By:  /S/ Chris Baker
                                        Chris Baker
                                        Michael Curtis
                                        Attorneys for Plaintiff
                                        STEVE THOMA

- 17 -

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury.

Dated:  August 11, 2016        BAKER & SCHWARTZ, P.C.


                               By:  /S/ Chris Baker
                                    Chris Baker
                                    Michael Curtis
                                    Attorneys for Plaintiff
                                    STEVE THOMA

COMPLAINT AGAINST CBRE AND JP MORGAN CHASE

Exhibit A

## CONSENT TO SUE UNDER

## FAIR LABOR STANDARDS ACT (29 U.S.C. § 216(b))

I worked for JP Morgan Chase from approximately September 2010 until December 2013 as a facility manager.   I then worked for CBRE as a facility manager from December 1, 2013 to October 9, 2015.

I consent to be a party plaintiff in a lawsuit alleging that JP Morgan Chase and CBRE violated the Fair Labor Standards Act and California labor laws.  I understand that this lawsuit seeks unpaid overtime and related damages that may be owed to me and other current and former employees of JP Morgan Chase and CBRE.

I understand that I have the right to choose other counsel and to pursue my claims solely on my own behalf, and I choose to be represented in this matter by class counsel Baker & Schwartz PC, and other attorneys with whom they may associate.

Dated: August 10, 2016

Signature:
agreed & accepted

Print Name: Steve Thoma

Exhibit B

# Baker & Schwartz

professional corporation
44 Montgomery Street, Suite 3520
San Francisco, CA 94104
213.705.7379
mcurtis@bakerlp.com
www.bakerlp.com

March 7, 2016

**<u>Via Certified Mail</u>**

Labor & Workforce Development Agency
Attn. PAGA Administrator
1515 Clay Street, Suite 801
Oakland, CA 94612

Kathy PourSanae
CBRE, Inc., Counsel—Employment
400 S. Hope Street, 25th Floor
Los Angeles, CA 90071

       *RE:    Request For Relief Under the Private Attorney General's Act*

Dear LWDA and Ms. PourSanae:

      I represent Steve Thoma, a former facility manager of CBRE, Inc. and CBRE Group, Inc (collectively "CBRE"). Mr. Thoma is an "aggrieved employee" under California Labor Code section 2699 *et seq.* The purpose of this letter is to provide notice to the LWDA and his employer.

      Mr. Thoma seeks to represent himself and other current and former employees with respect to violations of the California Labor Code pursuant to Labor Code section 2699 *et seq.* CBRE misclassified Mr. Thoma and its other California facility managers as exempt, resulting in numerous Labor Code violations. The facts and theories in support of Mr. Thoma's claims are set forth below.

      CBRE employed Mr. Thoma as a facility manager from December 2013 to November 2015. Facility managers are supervised by senior facility managers, who are supervised by regional facility managers, who are supervised by regional facility directors.

      One of Mr. Thoma's most prominent duties as a facility manager was traveling to and inspecting the facilities to which CBRE assigned him. The inspections include things like

LWDA
Kathy PourSanae
March 7, 2016
Page 2

whether fire extinguisher certifications were up to date and noting the safety and functionality of the facility.  The facility managers then must enter information about each inspection into a computer system when they return from the inspections.  In addition to the regular inspections, facility managers must also often make additional trips to their assigned facilities when emergencies occur, such as toilets overflowing, and to let workers into the facility after business hours to perform repairs.

Another large part of facility managers' job duties is processing the repairs and maintenance that occur at their assigned facilities.  Routine maintenance was often performed by CBRE employees called "engineers."  Other work was performed by vendors on an approved list CBRE provided to the facility managers.  Facility managers would engage the vendor through CBRE's computer-based work order system and then later approve the invoice the vendor submits for the work.  Whether the work is done by a CBRE engineer or a vendor, the facility manager spends extensive time processing related paperwork through a CBRE computer program.

A small part of facility managers' jobs is working on recommendations to higher-ups for large projects at the facilities to which they are assigned.  These were most commonly roof repairs or replacement of air conditioning systems.  Facility managers often work with a higher-up called a project manager to prepare these recommendations.

Mr. Thoma worked well more than 40 hours a week and more than eight hours a day, but was not paid overtime.

CBRE did not provide Mr. Thoma with legally compliant meal periods or rest periods.

Mr. Thoma was not paid all of his earned wages upon termination.  For instance, he was not paid overtime or premium wages for missed meal and rest periods.

The wage statements CBRE provided to Mr. Thoma did not properly state, among other things, his hours worked or overtime hours.

Mr. Thoma is an aggrieved employee under PAGA because he was employed by Defendants during the applicable statutory period and suffered one or more of the set forth Labor Code violations.  Mr. Thoma seeks to recover on his behalf, on behalf of the State, and on behalf of all current and former aggrieved employees of CBRE, the civil penalties provided by PAGA, plus reasonable attorney's fees and costs in this representative action.

Mr. Thoma seeks penalties pursuant to PAGA for the violation of the following Labor Code sections:

      a.     failure to provide prompt payment of wages to California facility managers upon termination and resignation in violation of Labor Code §§ 201, 202, 203;

LWDA
Kathy PourSanae
March 7, 2016
Page 3

b.     failure to provide accurate itemized wage statements to California facility managers in violation of Labor Code §§ 226(a), 1174, and 1174.5;

c.     failure to provide meal periods and rest periods to California facility managers in violation of applicable wage orders and Labor Code §§ 226.7, 512, and 558;

d.     failure to pay overtime wages to California facility managers in violation of applicable wage orders and Labor Code §§ 204, 510, 558, 1194 and 1198; and

e.     failure to keep required payroll records in violation of the applicable wage orders and Labor Code §§ 1174 and 1174.5.

With respect to violations of Labor Code § 226(a), Labor Code § 226.3 imposes a civil penalty in addition to any other penalty provided by law of two hundred fifty dollars ($250) per aggrieved employee for the first violation, and one thousand dollars ($1,000) per aggrieved employee for each subsequent violation of Labor Code § 226(a).

With respect to violations of Labor Code §§ 510 and 512, Labor Code § 558 imposes a civil penalty in addition to any other penalty provided by law of fifty dollars ($50) for initial violations for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages, and one hundred dollars ($100) for subsequent violations for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.  Mr. Thoma seeks civil penalties in the amount of unpaid wages owed to aggrieved employees pursuant to Labor Code § 558(a)(3).

With respect to violations of Labor Code § 1174, Labor Code § 1174.5 imposes a civil penalty of $500 for each violation.

Labor Code § 2699 et seq. imposes a civil penalty of one hundred dollars ($100) per pay period, per aggrieved employee for initial violations, and two hundred dollars ($200) pay period, per aggrieved employee for subsequent violations for all Labor Code provisions for which a civil penalty is not specifically provided, including Labor Code §§ 204, 226.7, 1174, 1194, and 1198.

Thank you for your attention to this matter.

Very truly yours,

Michael Curtis